IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                        No. 10-CR-03101 MCA

MARTIN AGUILAR,

        Defendant.

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

        This matter is before the Court upon Defendant's Opposed Motion to Dismiss [Doc. 22]. The Court has considered the written submissions of the parties, the exhibits tendered by the parties, the arguments of counsel and the testimony of witnesses at the evidentiary hearing on Defendant's motion, and is otherwise fully advised.

**DISCUSSION**

        Defendant is an enrolled member of Kewa Pueblo (formerly Santo Domingo Pueblo). [Doc. 24 at 5] He is charged in a four count indictment with (1) bartering for golden eagle parts; (2) taking a bald eagle without a permit; (3) possession of bald eagle parts without a permit; and (4) taking a hawk without a permit. Counts 1-3 are brought under the Bald and Golden Eagle Protection Act, 16 U.S.C. § 668. Count 4 is brought under the Migratory Bird Treaty Act. 16 U.S.C. §§ 703 and 707(a). Defendant's motion to dismiss relies on three arguments. First, he asserts that the BGEPA impermissibly burdens his practice of Native American religion in violation of the Religious Freedom Restoration Act (RFSA). [Doc. 22 at 5] Second, he contends that to the extent federal law criminalizes his "barter" of eagle feathers with another Native

American, it is unconstitutionally vague. [*Id.*] Third, he contends that the government lacks sufficient evidence corroborating his confession. [*Id.*]

**1.     The Religious Freedom Restoration Act**

The BGEPA generally prohibits the taking of bald or golden eagles. 16 U.S.C. § 668(a). However, under the BGEPA and implementing regulations, members of Indian tribes may apply for a permit to take a protected eagle for religious purposes.  16 U.S.C. § 668a; 50 C.F.R. § 22.22.  Defendant's first ground is largely controlled by *United States v. Friday*, 525 F.3d 938 (10th Cir. 2008).  In *Friday*, the defendant, a member of the Northern Arapaho Tribe of Wyoming, was charged under the BGEPA with the un-permitted shooting of a bald eagle.  The defendant argued that the permit requirement of the BGEPA violated the Religious Freedom Restoration Act, 42  U.S.C. § 2000bb.  The RFRA invalidates federal laws that substantially burden a person's exercise of religion unless the government shows that the burden "is in furtherance of a compelling governmental interest . . . and is the least restrictive means of furthering that compelling governmental interest."  Our Tenth Circuit Court of Appeals rejected the defendant's RFRA challenge to his prosecution.

In this case Defendant argues that the Secretary of the Interior's 2007 de-listing of bald eagles as a threatened species under the Endangered Species Act has changed the calculus applied in *Friday* so that even though the government's interest in protecting eagles remains compelling, the permitting process is no longer the least restrictive means of advancing that interest.  [Doc. 22 at 10] Defendant argues that, in view of the delisting of the bald eagle, to bring the BGEPA into compliance with the RFRA the Court must recognize a religious purposes

exemption to the BGEPA that would allow Native Americans to take eagles for religious purposes without first applying for a permit. [Doc. 22 at 10]

However in making this argument, Defendant overlooks a crucial factor that informed the USFWS's decision to delist the bald eagle for purposes of the ESA: the continued protection afforded eagles by the BGEPA. In delisting the bald eagle, the USFWS observed as follows:

> [W]e are delisting the bald eagle because it no longer meets the definition of a threatened species; the bald eagle will continue to be protected under the BGEPA and MBTA once it is delisted. These statutes prohibit unauthorized take and require permits for limited designated uses of eagles, their parts, and related items. The BGEPA expressly authorizes issuance of permits to take bald eagles for the religious purposes of Indian tribes. We will continue to issue only permits that we determine are consistent with the preservation of the bald eagle.

*Endangered and Threatened Wildlife and Plants; Removing the Bald Eagle in the Lower 48 States From the List of Endangered and Threatened Wildlife*, 72 Fed. Reg. 37346, 37,353 (Dep't of Interior  July 9, 2007) (final rule) (to be codified at 50 C.F.R. Part 17). Clearly, the USFWS, in delisting the bald eagle, did not intend to declare an open season on eagles. Considering that the USFWS relied on the continued protection afforded bald eagles by the BGEPA's permit process in deciding to delist the bald eagle, it would be illogical to assume from the mere fact of delisting that the permit process is now redundant. "Eagles are particularly vulnerable to hunting, and small changes in the number of breeding adults can have drastic impacts on the overall health of the species." *United States v. Wilgus*, 638 F.3d 1274, 1282 (10th Cir. 2011).

The United States has identified three ways in which a permitting process advances the compelling goal of preserving the bald eagle: (1) allowing the government to keep track of which eagles have been taken and by whom; (2) allowing the government to influence the number, species, and age of eagles taken and the season and geographic area from which they

are taken; and (3) allowing the government to equitably allocate the right to take eagles among Native Americans if the supply of eagles is not sufficient to satisfy the demand. *Friday*, 525 F.3d at 955.  This Court is not convinced that the delisting of the bald eagle has rendered these functions of the permitting process less important.  A permitting process is still necessary to keep track of takings; to influence the number, species, and age of eagles taken and the season and geographic area from which eagles are taken; to equitably allocate takings if demand exceeds supply; and to insure that individuals invoking the exception for the religious purposes of Indian tribes actually are tribe members and that the eagles are being taken and used for Native American religious purposes.

Defendant has not persuaded the Court that the delisting of the bald eagle has significantly reduced the importance of the permit process.  It may be that with a thriving population of eagles, a larger number of fatal taking permits would be "compatible with the preservation of the bald and golden eagle," 50 C.F.R. § 22.22(c), and, therefore, that the RFRA now requires the USFWS to more freely grant permits to individual applicants.  But Defendant did not apply for a permit, and therefore he may not bring an "as applied" RFRA challenge to the permitting process.  *Friday*, 525 F.3d at 950-51.   With respect to a facial challenge, the mere fact that the bald eagle has since been delisted is insufficient to distinguish this case from *Friday*.  Thus, applying *Friday*, the Court concludes that Defendant's facial challenge to the permit process fails.

**2.     Vagueness**

Defendant's second argument relates to Count 1. Count 1 arises out of an incident where Defendant allegedly traded jewelry to another Native American in exchange for two eagle wings. Under the BGEPA, it is illegal for anyone to "barter" eagle feathers. 16 U.S.C. § 668(a).

"Whether a court is analyzing a statute as void for vagueness on its face or as applied, the essence of the doctrine is that a potential defendant must have some notice or 'fair warning' that the conduct contemplated is forbidden by the criminal law." *United States v. Protex Indus., Inc.*, 874 F.2d 740,743 (10th Cir. 1989)."A criminal statute cannot be so vague that 'ordinary people' are uncertain of its meaning." *United States v. Apollo Energies, Inc.*, 611 F.3d 679, 687 (10th Cir. 2010). "Although it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." *McBoyle v. United States*, 283 U.S. 25, 27 (1931)

"Barter" is an exchange of one thing of value for another thing of value. [Doc. 22 at 13 n.1]  On the face of the BGEPA, there is no evident vagueness in applying the dictionary definition of barter to Defendant's exchange of jewelry for eagle parts. The exchange at issue here--jewelry for eagle wings--clearly meets the dictionary definition of barter.  However, the issue of vagueness is complicated by the "Morton Policy," a statement issued in 1975 by then Secretary of the Interior, Rogers Morton.  [Doc. 22-2] The Morton Policy states that the United States Department of the Interior generally will not prosecute Native Americans who as part of their religious and cultural practices "possess, carry, use, wear, give, loan, or exchange among other Indians, without compensation, all federally protected birds, as well as their parts or

5

feathers." [Doc. 24-1] (Emphasis added). Defendant argues that in view of the Morton Policy he was not on fair notice that his exchange with another Indian of jewelry for eagle parts was a crime. Again, the Court is not persuaded by this argument. Defendant has misread the Morton Policy. To come within the Morton policy, both sides of the "exchange" must be of protected birds, bird parts or bird feathers. Under the plain language of the Morton Policy Defendant's exchange of jewelry for eagle wings does not fall within the safe harbor. The Court concludes that the BGEPA read together with the Morton policy provided Defendant with constitutionally adequate notice that it was unlawful to exchange jewelry for eagle parts.

**3.     Corroboration of Defendant's Confession**

Defendant's third and final point is that Defendant's confession to USFWS agents is not supported by sufficient independent corroboration and therefore Counts 1 and 2 should be dismissed. Although federal courts no longer apply the traditional *corpus delicti* rule, there remains a requirement that the government introduce "substantial evidence which would tend to establish the trustworthiness of the [defendant's] statement." *United States v. Shunk*, 881 F.2d 917, 919-20 (10th Cir. 1989). Under the current corroboration rule, the independent corroborative evidence merely must establish that *someone* committed the crime; it need not confirm that the defendant committed the crime. *Id.*

This point cannot be raised prior to trial. Fed. Crim. P. Rule 12(b)(2) only allows pretrial motions that do not involve a "trial of the general issue." Like sufficiency of the evidence review, the analysis of whether a confession has been sufficiently corroborated is conducted *at trial* when the court has the benefit of the evidence and witnesses offered by the prosecution. *E.g. Yarbrough v. United States*, 309 F.2d 936 (10th Cir. 1962) (issue raised by motion for

judgment of acquittal following close of government's case); *United States v. Treas-Wilson*, 3 F.3d 1406 (10th Cir. 1993) (same).  This portion of Defendant's motion will be denied without prejudice,  so that Defendant may raise it at the appropriate time.

**4.**     **The Migratory Bird Treaty Act**

In Defendant's reply in support of his motion to suppress, Defendant asserted that the MBTA does not abrogate the treaty rights of Native Americans.  [Doc. 23 at 9, citing *United States v. Bresette*, 761 F.Supp. 658, 663 (D. Minn. 1991)].   Defendant did not develop this particular point in briefing his motion to suppress and he has not raised it in his motion to dismiss.  However, because the prosecution and conviction of Defendant for conduct that is not a crime would work a miscarriage of justice, the Court has raised the issue *sua sponte*.  As *Bressette*, and *United States v. Fiddler*, 2011 WL 2149510 (D. Nev. 2011) demonstrate, there are serious questions as to whether Congress, in enacting the MBTA clearly abrogated Indian treaty rights to hunt on tribal lands, and whether a tribe member may be prosecuted under the MBTA for exercising treaty rights on tribal lands.  So that the parties may be fully heard on this issue, the Court will direct the United States to show cause why Count 4 should not be dismissed for failure to alleged conduct that has been criminalized by the MBTA.

**IT IS THEREFORE HEREBY ORDERED** that Defendant's Opposed Motion to Dismiss is denied as to Counts 1-3;

**IT IS FURTHER ORDERED** that on or before November 14th, 2011  the United States shall show cause why Count 4 should not be dismissed;

So ordered this 7th day of November, 2011.

_____
M. CHRISTINA ARMIJO
UNITED STATES DISTRICT JUDGE